# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HERBERT A. DELGADO,                )
                                   )
　　　　　Plaintiff,                 )
                                   )
　　　　　　v.                        )        **Case No. 06 cv 6218**
                                   )
SEARS HOLDINGS CORP.,              )        **Magistrate Judge Susan E. Cox**
an Illinois corporation,           )
                                   )
　　　　　Defendant.                  )


## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Summary Judgment brought by the Defendant, Sears Holdings Corporation ("Sears") against the Plaintiff, Herbert Delgado ("Delgado"). Delgado worked for Sears as a full-time sales representative for over four years. He was, however, absent for over 150 consecutive days each year for the years 2001 through 2005. In 2005, after Delgado's fifth extended leave of absence, Sears did not offer Delgado his full-time position back. This suit followed, and contains allegations that Sears violated the Americans with Disabilities Act ("ADA") when it decided to hire another employee in Delgado's stead. For the reasons set forth below, Sears' Motion for Summary Judgment is granted.

## I. BACKGROUND[1]

As required for purposes of summary judgment, the facts here are presented in the light most

---

[1] The Court takes the facts from the parties Local Rule 56.1 statements and accompanying Summary Judgment briefs. Any factual disputes are noted in the text.

favorable to the non-moving party, Delgado.[2]

**A. Plaintiff's Employment with Sears**

Delgado is a 33 year old individual with a seizure disorder who was hired as a commissioned sales representative in Sears' Vernon Hills, Illinois store on May 27, 1997.[3] Delgado typically worked from 32 to 40 hours per week and was responsible for selling electronics in the store's "Brand Central" electronic's department.[4] Beginning in 2000, Delgado reported to Assistant Store Manager John Andrules ("Andrules").[5] Andrules was aware of Delgado's seizure disorder and offered Delgado the use of his office should Delgado need to rest because of his condition.[6]

It is undisputed that Delgado took leaves of absence from Sears for his seizure disorder in 2001, 2002, 2003, 2004, and 2005, each of which lasted more than 150 days.[7] Although Delgado always provided written notices of his indefinite absences and doctor's notes clearing him to return to work, these notes simply stated that Delgado could not work until further notice and, thus, Andrules had no way of predicting when Delgado would return from one of his disability leaves.[8] The doctor's notes did not state why Delgado had to be absent from work for so long or how the

---

[2] *See Bay v. Cassens Transport Co.,* 212 F.3d 969, 972 (7th Cir. 2000).

[3] Defendant's Statement of Undisputed Material Facts ("DSOF") at ¶ 1, 8.

[4] DSOF at ¶ 2-3.

[5] DSOF at ¶ 5.

[6] DSOF at ¶ 5, 15.

[7] DSOF at ¶ 17-22, 25.

[8] DSOF at ¶ 16; Plaintiff's Revised Response to Defendant's Statement of Undisputed Material Facts ("PRR") at ¶ 16, 24 (page 14); Appendix in Support of Defendant's Motion for Summary Judgment ("D. Appendix"), exhibits F, J, K, M, and O.

absences were related to his seizure disorder.[9]  When Delgado was on disability leave, Andrules had

to cover Delgado's absences by scheduling other staff to work.[10]

In 2001, Delgado was off work for over six months.  Sears placed Delgado back in his

regular job upon his return.[11]  In 2002, Delgado was again off work for over six months.  Upon

Delgado's return, Sears accommodated his 32-hour-per-week work restriction and was aware that

Delgado's doctor restricted him from driving.[12]  Sometime near Delgado's 2002 return to work,

Andrules phoned Sears' corporate human resources department ("HR") to inquire if he had to return

Delgado to his same job upon return from his disability leave and to advise them that Delgado had

seizures occasionally.[13]  In 2003, Delgado was off nearly eight months.  Sears placed Delgado in

his regular job and accommodated his 32-hour-per-week work restriction upon Delgado's return.[14]

In 2004, Delgado was off work for over six months and again Sears placed Delgado in his regular

job upon his return.[15]  In late April of 2005, Delgado took two weeks of unpaid leave after Andrules

had the following discussion with Delgado in order to anticipate Sears' upcoming scheduling needs:

"[a]re you going to be okay this year? Are you going to be leaving? Because I need you. We don't

have too many people on the floor."[16]  The record is silent with respect to Delgado's reaction to this

---

[9]  D. Appendix, exhibits F, J, K, M, and O.

[10]  Plaintiff's Revised Statement of Undisputed Material Facts ("PRSOF") at ¶ 30; Defendant's Response to Plaintiff's Revised Statement of Undisputed Material Facts ("DR") at ¶ 30.

[11]  DSOF at ¶ 17.

[12]  DSOF at ¶ 18.

[13]  PRSOF at ¶ 1.

[14]  DSOF at ¶ 19.

[15]  DSOF at ¶ 20.

[16]  PRR at ¶ 21; PRSOF at ¶ 34.

conversation, but Delgado then took a two week leave to get checked out by his doctors.[17]  Upon Delgado's return from this two week absence, Sears placed Delgado back in his regular job and accommodated his restrictions on driving, operating a forklift, lifting more than 25-pounds, and working more than 32 hours per week.[18]  Delgado was off work for a second leave of absence that year, beginning on June 26, 2005.[19]  Two months into this period of leave, Andrules hired a new employee as a consultative sales associate for the Brand Central department.[20]  Sears hired this new employee because Andrules anticipated that the level of service the Brand Central staff could provide to customers would, in addition to the strain caused by Delgado's absence, be further strained by the completion of a 2,500 square foot addition to Brand Central.[21]

Then, nearly four months into Delgado's leave, on October 8, 2005, Delgado sent Andrules a doctor's note releasing him to return to work later that month on October 17, 2005, and imposing restrictions from working more than 32 hours per week, lifting more than 10 pounds, climbing a ladder higher than 10 feet, and driving a forklift.[22]  On October 10, 2005, Andrules called a Sears HR consultant and confirmed that Delgado had exhausted his leave.[23]  Subsequently, although Delgado disputes it, Andrules and the Vernon Hills HR manager determined that there were no full

---

[17]  PRSOF at ¶ 34.

[18]  DSOF at ¶ 21.

[19]  DSOF at ¶ 22.

[20]  DSOF at ¶ 24; PRSOF at ¶ 9; DR at ¶ 9.

[21]  DSOF at ¶ 24.

[22]  DSOF at ¶ 25.

[23]  DSOF at ¶ 26; PRR at ¶ 26.  Delgado disputes this fact because one portion of Andrules' deposition testimony references Delgado's 2002 leave rather than his 2005 leave, but the Court finds that a second portion of Andrules' deposition testimony does corroborate the 2005 Sears HR hotline telephone call. D. Appendix, Tab B, at pp. 13-16, 42.

time positions available at the Vernon Hills store but that a part time position was available.[24] Although part-time associates typically work 25 hours or less per week, Delgado was offered a less time-consuming position at 9 hours a week.[25] On October 18, 2005, counsel for Delgado wrote Sears a response to the part-time offer, expressing Delgado's desire to return to his 32-hour-per-week employment status.[26]

Subsequent to its determination that Delgado had exhausted his leave, Sears placed Delgado on another personal leave of absence, effective September 18, 2005, for a period of up to 45 days.[27] Sears further extended Delgado's personal leave for another period up to 45 days by letter dated November 9, 2005.[28] Later that year, Sears made the decision that it could no longer retain Delgado.[29] Two years later, though he had not worked at Sears during the interim, Delgado's employment was officially terminated on July 31, 2007.[30]

Subsequent to his employment with Sears, Delgado applied for employment at a wide range

---

[24] DSOF at ¶ 26.

[25] DSOF at ¶ 27; PRR at ¶ 27.

[26] DSOF at ¶ 28; PRR at ¶ 28.

[27] PRR at ¶ 30; Revised Appendix in Support of Plaintiff's Opposition to Defendant's Motion for Summary
        Judgment ("P. Rev. Appendix"), Tab P.

[28] PRR at ¶ 30; D. Appendix, Tab W.

[29] PRSOF at ¶ 17.

[30] DSOF at ¶ 31; PRR at ¶ 31. Although PRR ¶ 31 seems to imply that Delgado was not terminated in
        2007 (over a year and a half since his last day of work), Delgado's response does not provide a clarified
        termination date. The Court cannot find a termination notice in the record and, in fact, Delgado never
        received any communication from Sears indicating that his employment was terminated. D. Appendix,
        Tab A, p. 171. The other references to Delgado's termination date also fail to clarify the point. D.
        Appendix, Tab B, at pp. 213, 229; First Amended Complaint ¶ 9. Sears' Motion for Summary Judgment
        (at ¶ 2) maintains that Delgado was terminated in 2007 and, therefore, we adopt this 2007 date
        throughout this Opinion.

of other businesses, including banks, car dealers, car repair services, furniture stores, golf courses, county health and clerk's offices, grocery stores, real estate offices, restaurants, insurance companies, the post office, Lamb's Farm, Goodwill, and warehouses.[31]  To date, Delgado secured no other employment except as a furniture sales representative for Leath Furniture, where he worked 32-38 hours per week from March 2006 until the store closed in May 2007.[32]

### B. Plaintiff's Physical Health

As noted above, the parties agree that Delgado suffered from seizures and they agree about the way in which these seizures presented themselves during the relevant period.  Delgado had seizures every day in 2002 or 2003, and now experiences seizures with a frequency somewhere between twice a month and once every two months.[33]  Eighty-five percent of Delgado's seizures occur at night and Delgado typically has a 10 second advance warning before the onset of a seizure.[34]  The seizures last 10 to 25 seconds.[35]  After a seizure, it takes Delgado 40 seconds to return from unconsciousness to a state where he can communicate verbally, but he has a severe headache that remains for 15 to 25 minutes and sometimes causes an additional seizure.[36]

With respect to daily activities, Delgado is limited in taking out the garbage if it is too heavy, and dusting if it takes long enough for him to tire; he cannot run after his kids, play sports, go to the

---

[31]  P. Rev. Appendix, Tab A-1.

[32]  DSOF at ¶ 42.

[33]  DSOF at ¶ 9; PRR at ¶ 9.

[34]  DSOF at ¶ 10-11.

[35]  DSOF at ¶ 12.

[36]  PRR at ¶ 12-13.

beach, or work in the yard because these activities could cause him to sweat and trigger a seizure.[37] Delgado is restricted from being outside for more than an hour when the weather is above 90 degrees and humid.[38] He is also restricted from driving, and lifting items more than 10, 20, or 25 pounds.[39]

In 2002, 2003, and 2005, Delgado's doctor imposed work restrictions upon him of no more than 32 hours per week.[40] As of Delgado's most recent work authorization in May 2007, Delgado was restricted from working more than 8 hours per day or 40 hours per week.[41] Delgado's doctor also restricted him from having sex at all, and when he was having seizures, he followed this restriction.[42] There were times when Delgado did not have sex for as much as four months.[43] However, in the last five years, when he was not having seizures, his frequency of sexual relations was "maybe once a week."[44]

## II. LEGAL STANDARD

Summary judgment should be granted when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue of material fact and the moving party

---

[37] DSOF at ¶ 33-36, 44; PRR at ¶ 34.

[38] DSOF at ¶ 43.

[39] *Id.*; PRR at ¶ 43. There is clearly a disagreement surrounding Delgado's lifting restriction but counsel for Delgado fails to clarify what the lifting restriction is or provide the Court enough additional information on the subject. Therefore, the weight restriction will be referred to from this point forward as

20 pounds.

[40] DSOF at ¶ 18, 19, 21.

[41] PRR at ¶ 41; P. Rev. Appendix, Tab J.

[42] DSOF at ¶ 39, 43; PRR at ¶ 39.

[43] PRR at ¶ 39; D. Appendix, Tab A, at pp. 61-63.

[44] PRR at ¶ 39.

is entitled to judgment as a matter of law.[45]  The party seeking summary judgment bears the initial burden of showing that no genuine issue of material fact exists.[46]  In response, the non-moving party cannot rest on the bare allegations of the pleadings or conclusory statements in affidavits, but must support its contentions with proper documentary evidence of material facts that show there is a genuine issue for trial.[47]  A material fact must be "outcome determinative" under the governing law.[48]  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[49]  In considering whether summary judgment is appropriate, the court must consider the record as a whole and draw all reasonable inferences in the light most favorable to the non-moving party.[50]

## III. DISCUSSION

The crux of the instant case centers around Delgado's faulty impression that, due to his seizure disorder, the ADA will protect his job with Sears.  However, the ADA does not automatically require an employer to accommodate indefinite leaves of absences, even if it has done so on prior occasions.  Rather, the ADA provides that qualified disabled individuals are entitled to continue to work for their employer if reasonable accommodations can be fashioned to facilitate that employment.

Delgado's briefs do not present his ADA claim clearly.  As best the Court can glean,

---

[45] *See Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 731 (7th Cir. 2001).

[46] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986).

[47] *See Celotex*, 477 U.S. at 324; *see also Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 598 (7th Cir. 2000).

[48] *Insolia*, 216 F.3d at 598-599.

[49] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[50] *See Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

Delgado alleges that he is disabled under the ADA, and that Sears regarded him as disabled under the ADA. Further, Delgado alleges that he is a qualified individual under the ADA despite his lengthy absences because Sears had allowed him back to work after absences of similar length for the preceding four years. In response, Sears argues that Delgado is not disabled within the meaning of the ADA and asserts that even if he was, there was no accommodation failure. More importantly, Sears argues that attendance was an essential function of Delgado's job and, due to Delgado's excessive absences, he is not a qualified individual under the ADA.

It should be noted that although Delgado often references the Family Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2601 *et seq.*, in his filings with the Court, the case at bar is not an FMLA case.[51] The FMLA requires covered employers to provide up to 12 weeks of unpaid leave in a 12 month period to eligible employees.[52] The Court notes that Delgado's absences of over 150 days per year clearly exceeded the leave allowed under FMLA and qualify as far more than would have been job-protected under that statute, should it have applied here.

To establish disability discrimination under the ADA, Delgado must show that: (A) he is disabled; (B) he is qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and (C) he was denied a reasonable accommodation or suffered from an adverse employment action because of his disability.[53]

### A. Disability

Delgado must first show that he is disabled under the ADA. The Court finds that Delgado

---

[51] Delgado filed a FMLA claim with his original Complaint. He did not include a FMLA claim in his First Amended Complaint, at issue here.

[52] 29 U.S.C.A. § 2612(a)(1).

[53] *See Nese v. Julian Nordic Const. Co.,* 405 F.3d 638, 641 (7th Cir. 2005).

is not disabled under the ADA due to the intermittent nature of his seizure disorder. For Delgado to establish his *prima facie* case, he can show that either: (1) he has a physical impairment that substantially limits him in one or more major life activities; (2) he has a record of such an impairment; or (3) Sears regarded him as having such an impairment.[54] If Delgado's condition does not meet one of these categories (even if he was terminated because of some medical condition), he is not disabled within the meaning of the Act.[55]

Further, because "[t]he ADA is not a general protection for medically afflicted persons," the fact that a plaintiff has a medical condition in and of itself does not constitute a disability.[56] Thus, even a seizure disorder does not make a person disabled unless that condition substantially limits a major life activity.[57] Major life activities include: "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[58] A person is "substantially limited" with respect to daily activities if, compared to the average person in the general population, he cannot perform or is limited in the manner or extent which he can perform one of the recognized activities.[59] "The Court must interpret these terms strictly to create a demanding standard for

---

[54] *See Nese*, 405 F.3d 641; 42 U.S.C. § 12102(2).

[55] *See Nese*, 405 F.3d at 641.

[56] *Id.* (*citing Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051 (7th Cir.1997)).

[57] *See* 42 U.S.C. § 12102(2); s*ee also Nese*, 405 F.3d at 643 (finding that plaintiff failed to show that his employer, who was aware of his epilepsy, believed he was substantially limited in any major life activity); *Corley v. Department of Veterans Affairs ex rel. Principi*, 218 Fed.Appx. 727 (10th Cir. 2007) (finding that plaintiff's seizure disorder did not make him disabled under the ADA); *Robinson v. Lockheed Martin Corp.*, 212 Fed. Appx. 121 (3d Cir. 2007) (finding that plaintiff's seizure disorder did not substantially limit a major life activity as required under the ADA); *Brunke v. Goodyear Tire and Rubber Co.*, 344 F.3d 819 (8th Cir. 2003) (finding that plaintiff's epilepsy did not substantially limit any major life activity).

[58] 29 C.F.R. § 1630.2(I); *see also Dvorak v. Mostardi Platt Assoc., Inc.*, 289 F.3d 479, 483 (7th Cir. 2002).

[59] *See* 29 C.F.R. § 1630.2(i)(ii); *see also Dvorak,* 289 F.3d at 483.

qualifying as disabled."[60]  In fact, the United States Supreme Court has held that to qualify as being substantially limited in a major life activity, "an individual must have an impairment that *prevents or severely restricts* the individual from doing activities that are of central importance to most people's daily lives."[61]

During the time he is having a seizure, Delgado claims that he is substantially limited in the activities of seeing, hearing, talking, caring for himself, eating, interacting with others, performing manual tasks, thinking, learning, sexual relations, standing, and lifting.  Delgado also claims that he is limited in many of these activities during the recovery period following a seizure. This would make Delgado limited in the aforementioned activities for approximately one minute, twice a month, after which Delgado would  have a severe headache that lasts nearly a half hour and might trigger another seizure.[62]

Delgado's seizure and post-seizure limitations do not meet the Seventh Circuit's definition of a disability. In *Moore v. J.B. Hunt Transport, Inc.*, the Seventh Circuit held that the plaintiff misinterpreted *Vande Zande v. Wisconsin Department of Administration* when trying to establish his intermittent impairment as a disability.[63]  The plaintiff in *Moore* cited *Vande Zande* when he argued that the "flare ups" he suffered rendered his condition a disability because they caused him to be completely debilitated.  However, the plaintiff was wrong in relying on *Vande Zande* in such a way because,

---

[60]  *Toyota Motor Mfg. Ky. Inc. v. Williams*, 534 U.S. 184, 198 (2002).

[61]  *Toyota*, 534 U.S. at 198 (emphasis added).

[62]  DSOF at ¶ 9, 12; PRR at ¶ 9, 12-13.

[63]  221 F.3d 944, 952 (7th Cir., 2000).

[i]n that situation, we stated that "an intermittent impairment that is a characteristic manifestation of an admitted disability is, we believe, a part of the underlying disability and hence a condition that the employer must reasonably accommodate." [Here, Plaintiff] does not seek accommodation for an intermittent impairment resulting from an "admitted disability"; instead, he attempts to use his intermittent flare-ups to establish that his impairment is a disability. *Vande Zande*, therefore, is not controlling. Furthermore, we do not believe that [Plaintiff's] infrequent flare-ups, one or two per year, render his condition a disability.[64]

In the instant case, Delgado seeks to use *Vande Zande* in the same way as the plaintiff in *Moore* did. Namely, Delgado seeks to use his intermittent seizures to establish that he is disabled, which he cannot do. As the Fourth Circuit recognized in *E.E.O.C. v. Sara Lee Corporation*, a plaintiff with seizures that caused her to shake and become unresponsive to her surroundings once or twice per week was not disabled because she failed to demonstrate that her lack of sleep was worse than the quality of sleep of the general population.[65] Similarly, Delgado cannot demonstrate that the activities in which he is limited in during a seizure and post-seizure (total time equals one minute twice a month) substantially limit his major life activities more than an average person in the general population can perform those same major life activities. Additionally, for the same reason, the headaches that Delgado experiences after a seizure are not substantially limiting within the meaning of the ADA.[66]

In addition to his temporary limitations during and immediately following a seizure, Delgado

---

[64] *Id.* (internal citations omitted).

[65] *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 352-353 (4th Cir. 2001).

[66] *See Wiggen v. Leggett & Platt, Inc.*, Case No. 03C1986, 2004 WL 2515823, at *4 (N.D. Ill. Nov 5, 2004) (finding plaintiff's periodic and temporary headaches not substantially limiting).

also claims that he is continuously and substantially limited in the major life activities of working more than 30-32 hours per week, lifting more than 20 pounds, being outdoors for more than an hour in weather that is over 90 degrees and humid, doing yard work, driving, and having sex.

With respect to his continuous restrictions on being outdoors for more than an hour in weather that is over 90 degrees and humid, doing yard work, or lifting more than 20 pounds, Delgado cannot demonstrate here that he is more limited than the general population either. Further, Delgado's arguments to the contrary regarding all of his restrictions are belied by Delgado's July 2007 travels, when Delgado alone took his 4-year-old daughter on a three-week vacation to El Salvador.[67] This leaves the following activities to be discussed: (1) working more than 30-32 hours per week; (2) driving; and (3) having sex.

First, with respect to working, in order for an individual to qualify as disabled in the major life activity of working, that individual must "be significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."[68] "If jobs utilizing an individual's skills...are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs."[69] Here, Delgado has conceded that a host of different positions are available. In fact, Delgado has applied for positions at fourteen kinds of businesses after his employment with Sears, obviously believing that he is

---

[67] DSOF at ¶ 37.

[68] *Squibb v. Mem. Med. Ctr.*, 497 F.3d 775, 782 (7th Cir. 2007); *see also* 29 C.F.R. § 1630.2(j)(3)(i).

[69] *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999).

capable of performing a position with each of these potential employers.[70] Delgado has also made it a point to affirmatively note that as of his most recent work authorization in May 2007, he is restricted from working more than 40 hours per week, thus, effectively contradicting his assertion that he is continuously disabled in the major life activity of working more than 30-32 hours per week. [71] Therefore, based on the aforementioned, Delgado is not substantially limited in the major life activity of working.

Second, the Seventh Circuit has consistently held that driving is not considered a major life activity.[72] Likewise, the Seventh Circuit has also held that "'[g]etting to and from work assignments' is not a major life activity."[73] Other circuits have also agreed that driving is not a major life activity.[74] For example, the First Circuit emphasized that "the alleged major life activity that was impaired, driving, is simply not on par with those basic, essential human functions that are within the contemplation of the ADA."[75] Driving is simply not a major life activity within the meaning of the ADA and, thus, Delgado's argument that he is substantially limited in this activity fails.

Third, with respect to the activity of sex, Delgado claims that the frequency of his sexual

---

[70] P. Rev. Appendix, Tab A-1.

[71] PRR at ¶ 41; P. Rev. Appendix, Tab J.

[72] *See Yindee v. CCH Inc.*, 458 F.3d 599, 601 (7th Cir. 2006); *see also Champlin v. Wonewoc-Center School District*, 72 Fed.Appx. 445, 448 (7th Cir. 2003).

[73] *Sinkler v. Midwest Property Management Ltd. Partnership*, 209 F.3d 678, 685 (7th Cir. 2000).

[74] *See Chenoweth v. Hillsborough County,* 250 F.3d 1328, 1330 (11th Cir. 2001); *Carlson v. Liberty Mut. Ins. Co.*, 237 Fed.Appx. 446, 448 (11th Cir. 2007); *Robinson v. Lockheed Martin Corp.*, 212 Fed.Appx. 121, 124 (3d Cir. 2007); *Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 643 (2d Cir. 1998).

[75] *Acevedo Lopez v. Police Dept. of Com. of Puerto Rico*, 247 F.3d 26, 27 (1st Cir. 2001) (internal quotations omitted).

relations decreased.[76]  Delgado makes no mention of any limitation on sexual reproduction.  Sexual reproduction has been held to be a major life activity but this Circuit "has not established a rule that sexual relations are a major life activity for ADA purposes."[77]  In this case, similar to the Court in *Contreras v. Suncast Corporation*, "even if we assume that engaging in sexual relations is a major life activity," Delgado has failed to substantiate "his claim of sexual difficulties with any documentation or testimony beyond a general assertion that the frequency with which he has relations has decreased."[78]  It is also worth mentioning that even if we assume Delgado was substantially limited in the major life activity of sexual relations due to his seizures, this limitation could not serve as a basis for an ADA claim against his employer because even if Delgado were held to be disabled by virtue of inability to engage in sexual relations, Sears could provide no accommodation for this limitation.[79]

Delgado can also make out his *prima facie* case if he can demonstrate that Sears regarded him as having an impairment that substantially limited him in one or more major life activities.[80] "A person is 'regarded as disabled' when the employer, rightly or wrongly, believes that she has an impairment that substantially limits one or more major life activities."[81]  However, "if the condition

---

[76]  DSOF at ¶ 39, 43; PRR at ¶ 39; D. Appendix, Tab A, at pp. 61-63.

[77]  237 F.3d 756, 764, n.6 (7th Cir. 2001); *see also Squibb*, 497 F.3d at 785 (noting that "[a]lthough this [C]ourt has recognized that it could be inferred from *Bragdon* that engaging in sexual relations constitutes a major life activity, it has deferred the question." (referring to *Bragdon v. Abbott*, 524 U.S. 624 (1998))).

[78] 237 F.3d 756, 764 (7th Cir. 2001).

[79]  *See Squibb*, 497 F.3d at 785.

[80]  *See Nese*, 405 F.3d 641; 42 U.S.C. § 12102(2).

[81]  *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 335 (7th Cir. 2004) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)).

that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute."[82] Here, it is undisputed that Sears knew of Delgado's seizure disorder, but Delgado fails to show that Sears regarded him as substantially limited in any major life activities.

Delgado appears to be making an argument that Sears regarded him as disabled when it failed to allow him to return to his regular job in October 2005, despite the fact that Sears accommodated Delgado's absences for four prior years. Delgado does not articulate this argument in any depth in his briefs, and the Seventh Circuit made it clear that it is not the obligation of the Court "to research and construct the legal arguments open to parties, especially when they are represented by counsel."[83] However, we highlight the following Seventh Circuit view on the topic of accommodation:

> [w]e do not assume that "an employer offers accommodation only if it thinks that the employee suffers from a substantial limitation in a major life activity." Even if a jury could infer that an employer offered an accommodation because of some perceived impairment, the plaintiff still must demonstrate that the perceived impairment is one that would substantially limit a major life activity.[84]

Delgado has not offered any evidence to satisfy the burden that Sears perceived his impairment as substantially limiting any major activity.

### B. "Qualified Individual"

Even if Delgado could demonstrate that his seizure disorder constituted a disability or that

---

[82] *Mack v. Great Dane Trailers*, 308 F.3d 776, 782 (7th Cir. 2002).

[83] *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986).

[84] *Kupstas v. City of Greenwood*, 398 F.3d 609, 614 (7th Cir. 2005) (citing *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 335 (7th Cir. 2004)).

Sears regarded him as disabled, his claim of disability discrimination still fails because Delgado cannot be considered a "qualified individual with a disability" because he failed to show up to work. "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position" in question.[85]  The law requires that "[t]he plaintiff bears the burden of proof on the issue of whether he is a 'qualified individual' under the ADA."[86]

Here, the position in question for which Delgado must demonstrate that he was a "qualified individual," was that of a sales representative selling electronic equipment in a retail environment. The Seventh Circuit has consistently held it is a "common sense" notion that  "an employee who does not come to work cannot perform the essential functions of his job."[87]  Thus, those who cannot report to work regularly due to their disability are not qualified individuals because regular and predictable attendance is an essential function of a job.[88]  While the Seventh Circuit made it clear in *Waggoner v. Olin Corporation,* that "'[w]e are not establishing a hard-and-fast rule that no absences from work need be tolerated,' it also made clear that no business is 'obligated to tolerate erratic, unreliable attendance.'"[89]  More concretely, the Seventh Circuit has stated that it does,

> not dispute that a business needs its employees to be in regular
> attendance to function smoothly; the absence of employees is

---

[85]  42 U.S.C. § 12111(8).

[86]  *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1003 (7th Cir.1998).

[87]  *Waggoner v. Olin Corp.*, 169 F.3d 481, 483 (7th Cir. 1999); *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000); *Nowak,* 142 F.3d at 1003.

[88]  *See Amadio v. Ford Motor Co.,* 238 F.3d 919, 927-928 (7th Cir. 2001); *see also Waggoner*, 169 F.3d at 483; *Nowak,* 142 F.3d at 1003.

[89]  *E.E.O.C. v. Yellow Freight System, Inc.*, 253 F.3d 943, 949 (7th Cir. 2001) (citing *Waggoner*, 169 F.3d at 484 (citing *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 601 (7th Cir. 1998)).

> disruptive to any work environment. However, it is not the absence itself but rather the excessive frequency of an employee's absences in relation to that employee's job responsibilities that may lead to a finding that an employee is unable to perform the duties of his job.[90]

On this point, the Court has further articulated that the "[i]nability to work for a multi-month period removes a person from the class protected by the ADA."[91] The law does not require an employer to retain any employee who cannot come to work for over 150 days each year, irrespective of whether that employee is disabled. Here, Delgado falls into the multi-month absence category that is not protected under the rubric of the ADA. Put simply, Sears was not legally required to keep Delgado's position open indefinitely or retain Delgado as a full-time sales associate when he could not be present on the sales floor for over 150 days each year.

Further, in *Jovanovic v. In-Sink-Erator Division of Emerson Electric Company*, the Seventh Circuit noted that attendance is an essential function of a given job "where the work must be done on the employer's premises."[92] Although the plaintiff in *Jovanovic* held a factory job and Delgado held a sales job, we liken Delgado's sales functions to the maintenance and production functions performed by the *Jovanovic* plaintiff in that both jobs "cannot be performed if the employee is not at work."[93]

> As the district court judge in *Jovanovic* noted, 'the only imaginable accommodation would be an open-ended schedule that would allow [Plaintiff] to come and go as he pleased.' We would be hard-pressed to imagine a manufacturing facility that could operate effectively when its employees are essentially permitted to set their own work

---

[90] *Haschmann,* 151 F.3d at 602.

[91] *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003).

[92] *Jovanovic*, 201 F.3d at 900.

[93] *Id.*

> hours, and we thus reject such a schedule as an unreasonable accommodation under the circumstances of this case.[94]

Similarly, we are hard-pressed to imagine a retail sales environment that could operate effectively when its sales staff is permitted to set their own work hours and to come and go as they please.

We also liken Delgado's situation to that of the plaintiff in *Corder v. Lucent Technologies Inc.*, where the plaintiff was unable to place herself within the protective reach of the ADA because, with respect to absences,

> there was literally nothing in the record to suggest that the future would look different from the past, and [plaintiff's] continuing request for an "unpredictable" amount of leave time as an ongoing accommodation actually contradicted her assertion that she would regularly attend work in the future...Thus, although she indisputably possessed the necessary skills for her job, she nonetheless failed to show that she was "qualified" for it.[95]

Similarly, Delgado's manager, Andrules, acknowledged that he had no way of predicting when Delgado would return from one of his disability leaves, nor is there anything in the record to suggest that Delgado's future absences would look any different from previous years.[96] Delgado does not even make an attempt to explain his prolonged absences with respect to his seizures. As Sears argues, it could no longer afford to keep Delgado on the payroll as a full-time employee because he could not be relied upon to work with any consistency. Based on all of the foregoing, Delgado fails to demonstrate that he was a "qualified individual" who could perform his position at Sears, either with or without reasonable accommodation, especially since Delgado fails to cite any authority for the remarkable proposition that he should be able to keep his job despite his poor attendance.

---

[94] *Id.* at 899, n.9.

[95] *Corder v. Lucent Technologies Inc.*, 162 F.3d 924, 928 (7th Cir. 1998).

[96] PRR at ¶ 24 (page 14).

Lastly, "the fact that [the employer] had infinite patience [with regard to the employee's poor attendance] does not necessarily mean that every company must put up with employees who do not come to work."[97] As aptly stated by the Eighth Circuit in *Buckles v. First Data Resources, Inc.*, even though an employer has numerous employees and accounts for possible employee absences, this does not negate attendance as an essential job function.[98] Thus, despite Delgado's arguments to the contrary, Sears can assert attendance as an essential function of Delgado's job even though Sears "covered" Delgado's shifts during his absences in prior years.

As a final point, the parties dispute whether there really was a full-time position available at the time Sears offered Delgado a part-time position.[99] Delgado posits that confidential documents produced under a joint Protective Order purportedly contradict this determination, as they allegedly demonstrate that there was a full-time position available.[100] However, this speculation by Delgado does not create a triable issue of fact. On this point, the Seventh Circuit has articulated that "when the evidence provides for only speculation or guessing, summary judgment is appropriate."[101] Further, the Court has already laid out its reasons for finding that Delgado was not terminated in violation of the ADA; it is of no consequence whether a full-time position was available when Sears determined that its business needs only allowed it to offer part-time employment to Delgado.

### C. Accommodation

---

[97] *Waggoner*, 169 F.3d at 484.

[98] *Buckles v. First Data Resources, Inc.*, 176 F.3d 1098, 1101 (8th Cir. 1999).

[99] DSOF at ¶ 26; PRR at ¶ 26.

[100] PRSOF at ¶ 12, 14; DR at ¶ 12, 14.

[101] *Davis v. Carter*, 452 F.3d 686, 697 (7th Cir. 2006). *See also Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 931-32 (7th Cir. 1995) and *Morfin v. City of East Chicago*, 349 F.3d 989, 1002 (7th Cir. 2003).

An individual with a disability will be considered qualified under the ADA if he or she can perform the essential functions of the job at issue with a reasonable accommodation.[102] In the instant case, Delgado never asked for an accommodation from Sears, yet he makes vague remarks that approximate a reasonable accommodation argument by referring to the fact that Sears previously held his position open during his lengthy absences. Though the Court once again notes that it is not the job of the court to ferret out Delgado's arguments for him, we will nonetheless briefly address the issue.[103] The ADA "in no way requires an employer to grant or continue an unreasonable accommodation in order to render an employee qualified."[104] With respect to unreasonable accommodations, this circuit has held that "[t]he ADA does not require an employer to accommodate an employee who suffers a prolonged illness by allowing him an indefinite leave of absence."[105] Nor does the ADA require that Sears return Delgado to his previous position: "[i]f the employer...bends over backwards to accommodate a disabled worker – goes further than the law requires...it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation."[106] Accordingly, Sears did not violate the ADA when it held Delgado's job open for him for a number of years despite lengthy absences and then finally determined, in 2005, that it could no longer allow this concession.

---

[102] 42 U.S.C. § 12111(8).

[103] *See Sanchez*, 792 F.2d at 703.

[104] William H. Danne, Jr., J.D., Annotation, *Who is "Qualified Individual" Under Americans With Disabilities Act Provisions Defining, and Extending Protection Against Employment Discrimination to Qualified Individual with Disability (42 U.S.C.A. §§ 12111(8), 12112(a)): Effect of Employer's Discontinuance of Voluntary Accommodation*, 146 A.L.R. Fed.1 § 22 (1998).

[105] *Nowak*, 142 F.3d at 1004.

[106] *Vande Zande v. State of Wis. Dept. of Admin.*, 44 F.3d 538, 545 (7th Cir. 1995).

**IV. CONCLUSION**

For the foregoing reasons, the Court grants Defendant's Motion for Summary Judgment in its entirety [dkt 49].

**IT IS SO ORDERED.**


ENTERED: <u>June 5, 2008</u>　　　　　　　_____
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE